Good morning, everyone. The first case on the call this morning is docket number 122873, Cassidy v. China Vitamins, Agenda No. 16. Appellant, you may proceed. Good morning, and may it please the Court, my name is Mike Rieses, and I'm here today on behalf of the appellant, China Vitamins. A plaintiff may reinstate a dismissed seller or distributor when the product manufacturer is, quote, unable to satisfy any judgment, close quote, as determined by the court. Those are the words that are at issue here. The issue presented is what the phrase, quote, unable to satisfy any judgment, close quote, requires a plaintiff to show under 2621B4. We respectfully submit that the statute means what it says, that a manufacturer has to be, quote, unable to satisfy any judgment, close quote, because it is incapable of completely discharging its financial obligations under the judgment, the plain meaning of the phrase. If we are correct, the judgment below cannot stand. The manufacturer in this case is not insolvent, bankrupt, or nonexistent. It is subject to Illinois jurisdiction. It filed an appearance. It filed an answer. It admitted that it manufactured the flexible bulk container at issue. Plaintiff is not even assertive that the manufacturer is unable to pay the judgment. Indeed, the plaintiff's own proofs show that the manufacturer is an It has a working website. It has a LinkedIn page. It has a sales office in the state of Georgia. I checked the website this morning. It has a warehouse in Savannah, Georgia. It has offices in a central warehouse in France, in Germany. Plaintiff, however, confines his Are you saying that the plaintiff could have gone to Georgia, for example? Absolutely. There are uniform statutes that allow a judgment creditor to record a judgment and enforce that judgment in a sister state and even in a different country. While I would never call myself an expert when it comes to these matters, it is a procedure where you simply go on, you register the judgment in the other jurisdiction, you record the judgment in a county. Here I think it would be Fulton County. That's what the website says. Where the debtor is found, you institute your garnishment action, and then you do your post-judgment asset discovery. That wasn't done. There were no efforts made outside Illinois. So this is not a case where you are going to be asked to address China's hostile policy of not recognizing American state corporate judgments. This is a case where an Illinois plaintiff did not attempt to collect on a judgment outside China. Not having assets in Illinois to satisfy a judgment is not the same as being judgment proof or execution proof under any reasonable reading of the statute. Otherwise, a large profitable company, a manufacturer, with assets located just across the border, let's say in the state of Indiana, would still be considered judgment proof or execution proof under the appellate court's interpretation for no reason other than a plaintiff's inability to enforce the judgment in Illinois. Not even the plaintiff or his amicus appears to argue for that interpretation of the statute. Plaintiffs simply did not show that the judgment was uncollectible where the manufacturer does business in this country and Europe. Does your reading of the statutory provision read out as determined by the court? No. Quite the contrary. Obviously the court is the one, the trial court is the one, that has to make that determination based on what the plaintiff needs to prove because it's the burden on the plaintiff to show that reinstatement of the seller or distributor is necessary because the manufacturer is, quote, unable to satisfy any judgment. I am not asking for any reading out of words under the statute. I think it's really more the plaintiff that is trying to do that here. But to talk about having a judgment credit or having to go to another jurisdiction, there is nothing unreasonable about expecting that to be done. No judgment is ever self-enforcing or self-executing, not even a personal injury judgment. A manufacturer should not be considered judgment proof or execution proof simply because its operations and assets are outside the state of Illinois. That's just the nature of modern commerce. Stuff gets manufactured in one place. It goes into the stream of commerce and it winds up in another place. That does not mean that the manufacturer which put the product in the stream of commerce is judgment proof or execution proof simply because it is located outside Illinois' borders. Are you accepting the definition of judgment proof or execution proof? Not the appellate court's interpretation. You are willing to accept those words though. Is it synonymous with the statutory language? Well, those words don't appear in the statute, obviously. And I'm not so sure that I would agree to that, no. Because I could see, for example, let's suppose hypothetically. So they go to Georgia, finally. They march through Georgia, Fulton County. There's a sales office there. They seize whatever the stuff is in the warehouse in Savannah, Georgia. And you know what? They don't get everything. It's a $9 million judgment. I did the interest this morning and now it's $15 million with 9% interest because this was back in 2012. Let's suppose they only collect $5 million. I don't think they were judgment proof or execution proof. We'd be back in the case. We're in the case right now on the negligence claim. But that would be a $5 million set off and that would be a $5 million recovery in the plaintiff's pocket. So I don't think I could accept the words judgment proof or execution proof. I go back to what I said earlier. It is based on inability to meet the financial obligations under the judgment. And it could be if they have $8 million or $100,000, we might be back in the case. But they also would not be judgment proof in that sense. If judgment proof means you can't collect a dime. Mr. Reese, what standards are you urging to be adopted to for a trial court to make that determination of the inability? I think that's going to be subject to proof based upon, I mean, here's the point. You know, the appellate court didn't make your job any easier. I just happen to be looking at paragraph 34 of the opinion. And to me it's as clear as mud. Because they're saying here, to reinstate a previously dismissed non-manufacturer defendant, the plaintiff, in addition to showing insolvency or bankruptcy, well, we don't have that here, may also show that the manufacturer has no property or does not own enough property within the court's jurisdiction. I don't think that has any bound for this determinant. But then it says, listen to this, we do not hold that this statute applies when a plaintiff merely has trouble collecting a judgment. There can be significant differences between situations involving a plaintiff experiencing some difficulty and a defendant being judgment proof. Well, we don't know if they have, they may have some experience, they may have some difficulty here in collecting in Illinois because it came up a goose egg. I don't know what the goose would show in Georgia. I think that they have to develop the record. They haven't done it. But you know what? Our dismissal, Justice Pilbright, was without prejudice. They can always go back and start again. Now, I realize that you're being asked to give a standard. I think the standard comes down to what the statute says. An inability to meet the financial obligations under the judgment. So when they go to Georgia, depending upon what they find, the trial court is going to have to make a determination. They didn't start that process here, and that's why I think that under Krakow, the prior appellate court case, the trial judge was correct to deny reinstatement based on what they did show as opposed to what they didn't show. You know, it's interesting that here the plaintiff is acknowledged in his brief that the manufacturer, quote, could voluntarily pay the judgment, close quote, but, quote, there was no realistic expectation of it ever doing so. Close quote. So again, this is not the judgment-proof or execution-proof defendant who manufactured it has no assets. But it's because the judgment was not voluntarily paid that other states do recognize foreign judgments, and we do have uniform statutes, as I alluded to earlier, that allow for judgments to be enforced whether it's in the state of Georgia or in France or in Germany. Just because the plaintiff did not seek to enforce the judgment outside Illinois does not make the manufacturer judgment-proof or execution-proof under the statute. The unwillingness to pay is not the same as an inability to satisfy the judgment. This court has recognized that the purpose of the statute is to permit an early dismissal of a distributor or seller when its liability results from its role in the distribution chain of the allegedly defective product. Take this case as an example. I represent China Vitamins. We are a distributor. We did not manufacture the flexible bulk container. We didn't manufacture the vitamins that went inside the flexible bulk container. We bought our product from, and I'm going to butcher the pronunciation, Zhejianhu, Z-H-E-J-I-A-N-H-U. And we imported the product for sale. And it got on a boat and it went across the Pacific and it landed on the West Coast and it was shipped by rail to Illinois. Ridley, the plaintiff's employer, that's where the product ultimately ended up. We had no role in the design, construction, or manufacture of the container. Now, this public policy behind the statute we submit creates a proper balance between imposing strict liability on non-manufacturing defendants and placing liability where it ultimately belongs upstream with the ultimate wrongdoer, the manufacturer. And this policy would not be defeated by requiring a plaintiff to present some evidence that the manufacturer is unable to satisfy a judgment where it has operations or assets. So as I think about Justice Pilbright's question a little bit more, I guess what I would say is I think at a minimum plaintiff should be required to actually show an inability to satisfy the judgment where the manufacturing defendant has operations or assets. That would seem to be a fairly straightforward test. Now, it might become a more difficult question depending upon, well, is it just Georgia or do they have to go to France or do they have to go to Germany? That's obviously, you know, gets a little bit beyond, I think, where we are in this case because we're starting with Georgia. That's this case. Mr. Reese, do you believe that the trial court viewed on this motion to dismiss it the same standard, the same characterization that you've given us today? I think that what Judge Kathy Flanagan did was she applied the law she founded in Cracow from the appellate court. She cited Cracow. And that standard is not based on a, you know, just looking at what are the assets. Now, remember in Cracow the distributor was brought back into the case on a different ground. It was brought back in on the ground that the manufacturing defendant was not amenable to jurisdiction. Of course, we don't have that issue because the manufacturing defendant appeared and answered. So this court certainly has Illinois as jurisdiction. May I ask you another question? Yes. The appellate court's judgment line, as they explain the reverse remand, is that we remand the cause of the trial court for further proceedings to determine whether the group is unable to satisfy any judgment within the meaning of the statute. And basically you're asking for this, you agree with that, right? No. No? What I disagree with is what the appellate court said is they could meet, No, but you agree with a remand that they could have further proceedings and a remand. The only question would be what issue the trial court's looking at. No. I'm saying the trial court should be affirmed. But since it was, but since we were dismissed without prejudice, because we were dismissed on the 2621, we made a motion for summary judgment. And Judge Flanagan said, okay, I'm giving it to you on a 2621. It's without prejudice. What I'm saying is they have to start from the beginning again, all right, going to Georgia. So I don't believe it should be a remand. I think it should be appellate court affirmed in part as to the negligence claim because we're not, we're not challenged. And it should be reversing the appellate court and affirming the trial court with regard to the strict private liability. And then they can go to Georgia. And if they turn up zero in Georgia, well, I guess we're going to be back arguing whether it should be Georgia or whether it should be France or Germany too. I mean, you know, that's going to become a little bit more. This is the easy case, I think, because they didn't even go to Georgia to try to collect. Now, when we're looking at the language of the statute, because that's where we have to start with the legislative intent. If the legislature intended to reinstate sellers or distributors based on an inability to enforce the judgment, they certainly could have said so. And other states have enacted laws patterned after a model act, which allows for a distributor's reinstatement when the court determines that it is, quote, highly probable that a claimant would be unable to enforce the judgment, close quote. So they actually used the words unable to enforce a judgment. That is words not found in 2621b-4. And the legislature elected not to include similar, quote, unable to enforce close quote provision for over 30 years, which we suggest shows that an inability to enforce a judgment is not determinant under the statute. To conclude by way of summary, plans did not show that the manufacturer was unable to satisfy any judgment under the statute when, one, the manufacturer is an ongoing business with a sales office in this country and offices and warehouse operations in Europe. Two, its unwillingness to pay is not the same as being unable to satisfy the judgment. And three, unlike other states, 2621 does not contain any language allowing for reinstatement when it is, quote, unable to enforce the judgment, close quote. If there are no other questions, we would ask, for all the reasons stated in our briefs, that you would reverse the appellate court with regard to the strict liability claim. Thank you. Mr. Chief Justice, your honors, and may it please the court. My name is Matt Kemp, and I represent plaintiff appellee Martin Cassidy. Section 5-2-621 of the Code of Civil Procedure, otherwise known as the Distributor Statute, permits a non-manufacturing defendant in a product's liability action to certify the name of the product's manufacturer and then be dismissed from that action before significant litigation costs are incurred. However, under that same statute, a previously dismissed defendant may be reinstated under one of five enumerated scenarios. The purpose of this dismissal and reinstatement mechanism is twofold. To allow dismissal when recovery can be had from the manufacturer, and to allow reinstatement when it cannot. This way, injured plaintiffs are not forced to bear the cost of their injuries alone. This court should not permit China Vitamins to turn the Distributor Statute into a sword to be wielded against injured plaintiffs by undermining the shield that the General Assembly provided through the statute's reinstatement mechanism for three reasons. First, the phrase issue in this case, subsection B-4's unable to satisfy any judgment, is a legal term of art synonymous with judgment proof or execution proof, and as such, must be applied according to its plain language. Second, China Vitamins' interpretation of the statute, permitting reinstatement only when the manufacturer is bankrupt or non-existent, relies on words and preconditions found nowhere in the subsection's text. And finally, even if this court determines that the phrase issue here, unable to satisfy any judgment, is ambiguous, Cassidy and the appellate panel below's interpretation of that phrase is the only one that comports with product's liability law in ensuring that the burden for placing defective products into the stream of commerce remains on the manufacturers and distributors who put them there and profited from them, and not the plaintiffs who were injured by them. Turning to my first point, your honors, subsection B-4's unable to satisfy any judgment, is a term of art synonymous with judgment proof or execution proof, as correctly noted by the appellate court below. Let's talk about that for a minute, Mr. Cannon. The appellate court, I'm going to have to read this because there's some quotes here, they determined that the statutory phrase, unable to satisfy any judgment, means judgment proof, because the Black's Law Dictionary definition of judgment proof means, quote, unable to satisfy a judgment for money damages because the person has no property, does not own enough property within the court's jurisdiction to satisfy the judgment, or claims the benefit of statutorily exempt property. But does one thing necessarily follow from the other? The fact that judgment proof means unable to satisfy a judgment for three enumerated reasons, doesn't mean that the unadorned phrase, unable to satisfy a judgment, means judgment proof, does it? Well, consulting the dictionary, your honor, certainly appropriate as the appellate panel noted, and when the phrase is undefined in the statute, that is a proper recourse for statutory interpretation. Would it follow that a judgment proof manufacturer wouldn't have any assets in the court's jurisdiction, if I'm understanding your question correctly? Yeah. That would be, we would submit that when that manufacturer has no assets that can be seized that could satisfy that judgment, they are indeed judgment proof. And as this court noted in Kellerman v. Crowe, the purpose of this section is, or a summary of this section is, its purpose is when action against the manufacturer would be impossible or unavailing. And if the manufacturer is judgment proof, and doesn't possess enough assets within the court's jurisdiction that can be seized, that can be gotten to, then that action is impossible and unavailing to the plaintiff. The appellate court said that unable to satisfy a judgment is a legal term of art. But Black's Law Dictionary doesn't contain an entry for unable to satisfy a judgment. So if this were truly a legal term of art with a set meaning, wouldn't we expect to find an entry in that regard in Black's Law Dictionary? Well, I don't know, Your Honor, that you would find an entry for an entire phrase like that. I've perused Black's Law Dictionary a few times. I'm certainly no expert on every page of it. But I don't frequently see phrases in there. But what the Cassidy appellate panel looked at were the individual constituent words. And the clear conclusion there was that what the General Assembly was talking about was a judgment proof manufacturer, someone who has no assets, and therefore is unable to satisfy the judgment that the court determined. So whether a phrase in whole appears or in part, I wouldn't be sure that that would be there. I wouldn't expect it to be there. I would expect single words to be in Black's Law Dictionary, maybe a compound word occasionally, but not an entire statutory phrase. Mr. Cannon, if your interpretation of unable to satisfy any judgment, not render the language in that paragraph 3 superfluous, doesn't the manufacturer no longer really exist superfluous? Doesn't it mean that the manufacturer no longer exists the same as nonexistent? So it makes those words superfluous. That would be. And that, Your Honor, is one of the problems with China Vitamins' interpretation of the statute. China Vitamins would submit that, at least in their briefs that I've seen, they would submit that subsection B-4 would apply only when the manufacturer is bankrupt or nonexistent. And that's what the Chirac Accord says. But aren't you relying on the term unable to satisfy any judgment? We would be relying on that term as a method of reinstatement, yes. But when looking at the language of subsection B-3, that the manufacturer no longer exists appears right there. There would be no need to repeat it in subsection B-4. And that undermines China Vitamins' interpretation of the statute. And the Chirac Accord panels as well. The Chirac Accord panels' interpretation relied on a phrase which was a factual distinction in a case called Harleysville Lake States Insurance Company v. Hilton Trading Corporation. And that court wasn't analyzing the statutory text. They were simply distinguishing the factual scenario in the case that they had before them from a factual scenario in Rosenthal v. Warner, which they were citing. And the Chirac Accord panel in 2014 said that authority indicates that a manufacturer is unable to satisfy any judgment when it's bankrupt or nonexistent. But in this case, your opposing counsel says that in Savannah, Georgia, that there is an ability for you to at least try to satisfy the judgment. Well, that is a misstatement, I believe, Your Honors. There is no ability in Savannah, Georgia? There is no ability in Georgia at all. The information that China Vitamins provided to this court is that there is a sales office in Georgia that Tyway Group has. And you investigated that? I investigated it as part of this appeal. It is not found in the record because that sales office was not listed on Tyway Group's website until after the citations to discover assets had been issued and come up empty. That sales office is listed as being in Alpharetta, Georgia. And Tyway Group's website provides an address for that sales office. And if you hover over it or click on the little star they have there, it shows an address in Alpharetta, Georgia. And this will veer outside the record, but if you have Internet access up there, if you can see, if you can look this up at some point, if you Google that address, following the first two or three results that are MapQuest and Google Maps, you'll see a result for a local UPS store. And that address at which Tyway Group listed sales office is a UPS mailbox. So no, I highly doubt that Tyway Group has... But isn't it the duty of the plaintiff to try to find out where they could find something? And he did. And China Vitamins' statements to this court in the reply brief and at oral arguments moments ago that Mr. Cassidy didn't satisfy that burden and didn't look outside Cook County are simply misstatements of the record. Mr. Cassidy's efforts to find assets with which Tyway Group could satisfy this judgment are documented in the record in Volumes 10 through 12. Could you explain that to us a minute? There seems to be a factual dispute about this. I was wondering about remand. Obviously this is your burden, the plaintiff's burden. Right. So what evidence did you introduce and present to the court that the manufacturer is unable to satisfy any judgment? What was the evidence? So after the judgment was rendered, Mr. Cassidy engaged the law firm Aquarian Hero to search for assets. And they did so using information available to them. This is all documented in Volumes 10 through 12. Citations to discover assets were issued to GlobalPak in Baltimore, Maryland, Procon Pacific in Oakbrook, Illinois, Lushalence Custom House in Elk Grove Village, Illinois, HSBC Bank in New York City, HSBC Bank in Hong Kong, and a company called Megasac in Magnolia, Arkansas. Now this ties back into the reason that Mr. Cassidy couldn't go to Georgia or going to Georgia would be unavailing is because at that time when these citations to discover assets were being issued, Tyway Group listed on its website a sales office in Magnolia, Arkansas for Megasac. And a citation to discover assets was sent to them. A citation to discover assets was sent to the entity in Georgia? To the entity in Arkansas. At that time the sales office was listed as being in Arkansas on Tyway Group's website. I'm sorry, I apologize if I was unclear. A citation to discover assets was sent to Megasac in Magnolia, Arkansas. And my co-counsel on this case and on this appeal got a letter from the attorneys for Megasac saying that Megasac was never a distributor for Tyway Group. Tyway Group had engaged them in discussions in early 2006 to become its U.S. sales office, and Megasac did not agree to that. But Tyway Group went ahead and listed them on their website anyway. So this is just another indication that Tyway Group is less than forthcoming about what its assets are and where they're located. So for Mr. Cassidy, as the appellate panel pointed out, to have to chase around the world playing a game of whack-a-mole to find these assets, at some point you've got to see that the weight is against Tyway Group. They simply don't have what they say. They don't have anything with which they can satisfy this judgment. And HSBC, furthermore, is a huge banking company. They've got operations in banks all over the world. And to say that Mr. Cassidy's search was limited to Cook County as China Vitamins says in its reply brief is simply factually untrue. So one of the things the appellate court did, my earlier question about them consulting LAC's law dictionary, do you disagree with the proposition that they came up with that judgment proof means, at least in one portion of it, doesn't own enough property within the court's jurisdiction to satisfy the judgment? I don't disagree with that at all, Your Honor. I think that's a frequent use of the word judgment proof. I mean, if you look at certain real estate interim type actions. Well, did the plaintiff have obligation to go beyond the jurisdiction? Would the plaintiff? Did they have an obligation to go beyond the jurisdiction where the judgment was in? Absolutely. And when Mr. Cassidy did so, in this case, there was nothing found. And furthermore, when that asset search was being conducted, Mr. Gaisi, I'd probably butcher his name as well, but from Query and Harrow, who conducted the search, indicated that his research had revealed to him that Tylea Group hadn't imported anything at all into the U.S. since 2011. So at some point, you're chasing for something that's not there. And as we noted in our brief, if you're digging for water, at some point you've got to say, there's nothing here to be found. There's nothing more to be found. So yes, the plaintiff would certainly have an obligation to look. And Mr. Cassidy did so, and the record reflects that. Baltimore, Maryland, Oak Brook, Illinois, and all the other locations that I previously mentioned, that weight and what he did and what he did in the record shows up, and it should mean something. China Vitamins has merely submitted speculation to this court. There's no indication, even if there was an office, an actual sales office of Tylea Group in Alpharetta, Georgia, where they say it is, or in Savannah, Georgia, where they claim to be, there's a warehouse. There's no indication that anything would be found there. They may have $3. I don't think they have $9 million sitting in the mailbox just waiting for Mr. Cassidy to come and collect it. If I understand what happened, the trial court found that you failed to meet the conditions for reinstatement under the statute. I presume those were factual findings based upon what was submitted. Then the appellate court reversed. And did the appellate court reverse on the basis of not agreeing with the factual findings or a different definition of unable to satisfy the judgment? Well, a little bit of both, Mr. Chief Justice. The trial court dismissed on the basis of the Chiraco versus U.S. Battery Manufacturing case, which was the only appellate court case at that time specifically analyzing subsection B-4. Subsequent to that, obviously, the first district came back with the Cassidy decision, which is on appeal today, and that disagreed with both the factual findings and the Chiraco court's determination that subsection B-4 only applies when a manufacturer is bankrupt or nonexistent. We would submit to this court that subsection B-4 would apply if a manufacturer is bankrupt, nonexistent, or judgment-proof. And yes, nonexistent is also covered in subsection B-3, but it would still be the same situation. The nonexistent manufacturer would not have sufficient assets to satisfy any judgment. It would therefore be unable to satisfy any judgment. The factual findings, to your question, Mr. Chief Justice, the Cassidy panel had a record at that time of Mr. Cassidy's asset searches and citations to discover assets, and these asset searches did not be fully carried out by the time that the trial court had dismissed China Vitamins. That's why China Vitamins was sought to be brought back in. Mr. Cassidy conducted his asset search. That asset search turned up no assets with which, by the way, a group could satisfy the judgment, and then Mr. Cassidy sought to bring China Vitamins back into the action. So it was a little bit of both. Now, there are a litany of federal cases that apply the statutory language, and they've all come to the same conclusion as well. Cases such as Halperin v. Merck, Sharpe & Dome Corporation, Welkel v. Briggs & Stratton, Fisher v. Brilliant World International, Gilmore v. Pesco KG, and Rosenthal v. Werner Company, which I previously mentioned. Each and every one of those cases includes and says that subsection B-4 applies when a manufacturer is judgment-proof. And even the Chirac Accord, the appellate panel that said subsection B-4 only applies when a manufacturer is bankrupt or nonexistent, quoted Harleysville Lake State's insurance company, which also says there's no suggestion the manufacturer is judgment-proof. And they all use that same judgment-proof language. So we would submit to this court that the legislative intent here was not to just limit subsection B-4 to bankrupt or nonexistent manufacturers, because that would make subsection B-3 and B-4 superfluous as to nonexistence. And the use of the broader phrase, unable to satisfy any judgment, indicates to us that the General Assembly contemplated additional scenarios. There's no need to use the phrase unable to satisfy any judgment if what you mean is bankrupt or nonexistent. You could just simply say bankrupt or nonexistent. And we believe that that shows the General Assembly thought of a broader intent. And as to China Vitamins' argument regarding what conditions can be used and when these manufacturers can be chased down, well, unable to satisfy any judgment, if the General Assembly had intended to upend products liability law and suddenly make a lot of plaintiffs start bearing the cost of their own injuries, they would have said so more explicitly. But to do so would be counter to this court's own dictates and would upend years and years and years of products liability law. And I would submit to this court that many times over, it's been noted that all entities in the chain of distribution are liable for the harms their products cause. Every one of them. And this court has noted that in Hammond v. North America and Asbestos Corporation, Grove v. Public Building Commission. Mr. Cannon, is it notable that statutes in other jurisdictions have provisions that do allow for reinstatement of the product, seller or distributor, when the court determines that it is highly probable that a claimant would be unable to enforce a judgment, but the statute here doesn't have the highly probable language? Is that notable at all, that the legislature did not include that? I think it's notable, Your Honor, but not for the reasons that China Vitamins claims. I think the legislature simply determined that their language in subsection B-4 was sufficient to convey this idea. And maybe they wanted to tighten things just a little bit and make sure that the manufacturer was truly unable to satisfy any judgment and not veer off into what the Cassie panel called some difficulty in enforcing the judgment. But I think the legislature just thought that their statute, the way they had written it in subsection B-4, was abundantly clear in what you should be doing, what any plaintiff should be doing. And you can look at the record that Mr. Cassie developed below. If a manufacturer distributes a product through a distributor that goes on to injure a plaintiff, that plaintiff should go look for assets at that manufacturer. And when that plaintiff has developed a sufficient record, as Mr. Cassie did, that there are no assets with which this company can satisfy the judgment, then the burden should be on the defendant to show some proof that there are assets actually in Georgia or actually in another state or in Indiana, as China Vitamins said. We would have no problem with going to Indiana, but China Vitamins has only given this court speculation as to what, if anything, is located anywhere in the U.S. But what Mr. Cassie has given this court in the record in volumes 10 through 12 is proof that assets were located nowhere that he searched. And these weren't just blind, aimless searches. These were actual searches based on financial records and incoming information about Taiwea Group's financial viability, where they were paying their bills from, what accounts these were coming from. And as I mentioned before, one of those searches was through HSBC Bank. And to think that HSBC simply asked a local branch if Taiwea Group had done business there is simply mind-boggling. It's not what HSBC would do. And if you look furthermore in the record, if I may finish briefly, if you look furthermore in the record, you'll see that HSBC searched throughout the U.S. and throughout the Shanghai office. Thank you, Mr. Chief Justice. Okay, in terms of revolt, I think what I heard the plaintiffs say is that they would have an obligation to go beyond Illinois in terms of the judgment. I thought I heard that. We have a video recording, and I trust that the court will look. And I think it's understandable that they would have that obligation. Justice Thomas asked the question, well, can we equate judgment proof with an inability to collect the judgment in Illinois? If the answer to that question is yes, then the statute really makes no sense. At least the appellate court's interpretation of the statute makes no sense. It's not speculation. There are many, many giant companies around the world that don't have any property in Illinois, don't have any operations in Illinois, and yet, according to what the appellate court's interpretation is, let's take, for instance, I know they have a fulfillment center, Amazon. Let's suppose Amazon, online commerce, seller of products, didn't have any operations in Illinois, didn't have any property in Illinois. According to the appellate court, Amazon is judgment proof. Amazon is execution proof. Really? Is that the interpretation that this court should adopt? Not even the plaintiff seems to be willing to go that far. Certainly, that should give you some cause. Now, if the statute said, and this is in reference to Justice Thomas' question, suppose the statute said, quote, highly improbable that the claimant could recover a judgment or collect a judgment, collect a judgment. Well, just maybe you could get to where the plaintiff and the appellate court are trying to take you, but the statute does not have that interpretation. I don't believe that you can equate an inability to satisfy a judgment with simply not having assets in Illinois to satisfy a judgment. Mr. Reis, I thought you would have got up right away and responded to Mr. Cannon's remarks about what's contained in volumes 10 to 12. Well, that's going to be my next point. Because if you look at the proofs that were submitted, I guess I went the wrong way. If you look at the proofs that were submitted, we didn't submit anything. We didn't have to submit anything. But the plaintiff submitted, and I'm looking at, I guess it would be 3013 to 3019. My recollection is that what the plaintiff did was they took a screenshot from the manufacturer's website that showed the sales office in Georgia and the operations in France and in Germany, and they had the LinkedIn page to show that they had employees. So if the plaintiff wants to attack, well, he's attacking what he did and the limited efforts he made, which never really did go beyond Illinois. This stuff about, well, they had an office in Arkansas at one point. I think he said, there's no affidavit that I remember on that. They were just going off of the website. And all I'm saying is if you look at the website, now business must be good in this country. Now they've got a warehouse in Savannah. And maybe they should start all over again. But what about the statement that they hired lawyers from Query and Herald who searched in New York and searched banks and a great deal more than a screenshot? Well, they had a – Is that all in the record? First of all, is that information in the record? There is an affidavit from the lawyer. But every third-party citation, it was all limited to what they could find in Illinois. They didn't go beyond Illinois to register the judgment. Look, if you want to try to go against a judgment outside Illinois to collect it, you have to take that judgment to another jurisdiction. They didn't do that. They never went to that other jurisdiction. All they did was say, well, we served them in Illinois, and they didn't come up with anything. That's not what you serve in Illinois. Again, I don't intend to be the expert, but if you just read the uniform statute, you have to take the judgment to another jurisdiction. They didn't do that. That's not outside the norm. Forty-seven states have enacted the uniform statute. Don't ask me the three that haven't. I hope it's not Georgia. But 47 states have enacted that uniform statute. France and Germany, the dissenting appellate judge also noted that they have these statutes. They just didn't try. Now, I realize it's factual, but to go to Justice Carmichael's question, Chief Justice Carmichael's question, is first you need what is a legal definition. The appellate court gave you the wrong definition, and today I heard the plaintiff doesn't even want to go with that definition. If you go with a legal definition, I think the definition is simply the plain and ordinary meaning of the phrase, which is an inability to completely discharge the financial obligations under the judgment. That's all it means. And we don't get into these questions about is it in Illinois, is it in Georgia, or is it somewhere else. The plaintiff referred to some federal cases. There is no case law that has clearly addressed this issue. That's why I think the case is in front of you today. Justice Burke asked a question concerning the language in subsection 3 that talks about when the manufacturer no longer exists, which was one of the reasons the majority of the appellate court found the way they did. Well, there's another interpretation of that statute, though. Subsection 3, as I read it, is grouped. It talks about situations that happen before service. So what are the words with which no longer exists are grouped? Not amenable to the jurisdiction of the courts of the state, or despite due diligence, not amenable to service of process. So I take that to mean that in 2007, when this lawsuit was served, if the Chinese manufacturer was no longer in existence in 2007, well, I think we're stuck. However, they did exist in 2007. Now we get to 2012. That's subsection 4, because that deals with a judgment. The default judgment was in 2012, not 2007. So the statute has these exceptions that are phrased for different stages of proceedings. Subsection 1 deals with limitations for statutes of repose. 3 talks about situations that exist at the time of service. Doesn't exist. You can't serve them. No jurisdiction. Subsection 4 and 5 deals with situations when the suit is ongoing and the manufacturer is in the case, such as a judgment. Well, that's what we have here. Or 5, if it talks about a settlement. So to go to your question, Justice Burke, I don't think that the words are superfluous with regard to subsection 3, because it addresses a different point in time. The plaintiff is in the awkward position here of trying to attack his own judgment, of trying to persuade you that this judgment is uncollectible based on efforts that were limited to Illinois. Maybe I'm mispronouncing it. I don't know if it's Krakow or Krakow. But the prior appellate decision, we think, is the better reasoned law. It is more in accordance with what are the realities of modern Congress. Judgment proof should not be limited to one jurisdiction. It is not outside the norm to expect a plaintiff with a $9 million judgment to look to other jurisdictions. Didn't do that here. The judge was not wrong in denying the motion to reinstate. We're still going to be in the case on a negligence claim. We'll certainly pursue those efforts to collect that judgment as they're required to reinstate the product. Where the manufacturer does business in this country and Europe outside of China. For all the reasons, again, we ask you to reverse the appellate court impartment and affirm the circuit court impartment. Thank you. Thank you. Case number 122873, Cassidy v. China Vitamins, will be taken under advisement as agenda number 16. Mr. Reese, Mr. Cannon, we thank you for your arguments this morning. You are excused.